IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | |
|---|---|
| SERGIO RODRIGUEZ,<br><br>*Plaintiff,*<br><br>v.<br><br>CAPTAIN CHRISTOPHER BOHNER, in his official capacity as Commanding Officer of Naval Submarine Base Kings Bay,<br><br>and<br><br>SCOTT BASSETT, in his official capacity as Public Affairs Officer for Naval Submarine Base Kings Bay,<br><br>*Defendants.* | Civil Action No.: 2:25-cv-00408<br><br>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF FOR CIVIL-RIGHTS VIOLATIONS |

## INTRODUCTION

1.  "[T]he First Amendment . . . does not go on leave when social media are involved." *Moody v. NetChoice*, 603 U.S. 707, 719 (2024). But federal officials violated this fundamental principle when they censored Plaintiff Sergio Rodriguez on a government Facebook page.

2.  In late summer 2024, when an electrical outage left military families at Naval Submarine Base Kings Bay without power for over 12 hours, Rodriguez—a decorated military advocate and Navy spouse—stepped up to help. He posted vital information and guidance for affected families on the Base's official public Facebook page. The response by Navy officials was swift and unlawful: Captain Christopher

1

Bohner ordered his subordinate, Scott Bassett, to ban Rodriguez from the Facebook page and delete all his comments.

3. Rodriguez is uniquely qualified to advocate for military families. A retired Army veteran and Navy spouse, he has earned a presidential commendation, the Military Spouse of the Year award, and numerous other honors for his tireless advocacy. His expertise and dedication to military families make his voice particularly valuable in times of crisis—precisely when Navy officials chose to silence him.

4. Rodriguez's only "offense" was offering practical guidance to struggling military families and questioning Navy officials' inadequate emergency response. Drawing on his personal experience and knowledge of military life, Rodriguez provided the kind of community support that military families desperately needed. But because Navy officials disliked his message, they deleted his posts. Even worse, they banned him entirely from the Facebook page.

5. Rodriguez brings this lawsuit to vindicate his fundamental constitutional rights. He seeks a court order requiring Defendants to restore his access to the Facebook page, reinstate his deleted comments, and cease their unconstitutional censorship.

## JURISDICTION AND VENUE

6. Plaintiff Sergio Rodriguez brings his claims directly under the First Amendment of the United States Constitution, seeking declaratory relief through the Declaratory Judgment Act, 28 U.S.C.§§ 2201, 2202.

7. This Court has original subject matter jurisdiction under 28 U.S.C. § 1331, as Plaintiff Rodriguez's claims arise under federal law.

8. Venue is proper in this Court under 28 U.S.C. § 1391(e)(1)(C) because defendants are officers or employees of the United States and Plaintiff Rodriguez resides in Chesapeake, Virginia, which is located in the Norfolk Division of the Eastern District of Virginia. Moreover, Defendants directed their conduct at Rodriguez in this District, and Plaintiff Rodriguez suffered and continues to suffer an infringement of his First Amendment rights in this District.

## PARTIES

9. Plaintiff Sergio Rodriguez served in the U.S. Army from 2000 to 2006, when he retired due to disability. As of 2010, he became a military spouse when his wife joined the Navy. She currently serves as a supply officer.

10. Defendant Captain Christopher Bohner is the commanding officer of Naval Submarine Base Kings Bay, located in Kings Bay, Georgia. Captain Bohner administers the Base's official Facebook page ("the Facebook Page"), controlling who can post, comment, or even access the page, including users from this District. Captain Bohner is sued in his official capacity only.

11. Defendant Scott Bassett is the Public Affairs Officer of Naval Submarine Base Kings Bay. He reports to Captain Bohner and assists him with administering the Facebook Page. Defendant Bassett is sued in his official capacity only.

12. Both Defendants Bohner and Bassett were acting under color of law when they banned Rodriguez from the Facebook Page and deleted his comments.

## FACTS

### A. Rodriguez Is an Award-Winning Advocate for Military Families.

13. Throughout his seven years in active duty service and for many years since his wife joined the Navy, Rodriguez has lived in military housing on various bases.

14. Rodriguez became adept at navigating the various systems and procedures to address housing repairs and other problems that arise for families in military housing.

15. Due to his familiarity and experience, Rodriguez began advocating for and assisting other military families who encounter problems with their military housing in numerous locations.

16. Rodriguez is well known in the military community for his advocacy and assistance to military spouses and families.

17. Because of his extensive advocacy, Rodriguez was recognized as "2022 Navy Spouse of the Year" by Armed Forces Insurance.

18. Rodriguez also received a commendation from President Biden and First Lady Jill Biden.

19. Senator Cory Booker wrote to Rodriguez that he was "inspired" by Rodriguez's work supporting military families and being a "voice for those who cannot speak up."

20. General Mark Milley wrote Rodriguez expressing deep appreciation on behalf of the Joint Chiefs of Staff for Rodriguez's tireless efforts helping newcomers

and military spouses adjust to the military environment. General Milley noted that Rodriguez plays a "critical role" in maximizing their potential for success.

21. As part of his advocacy for military families and spouses, Rodriguez regularly follows the official social media pages of various military bases.

22. Rodriguez uses these social media pages, including those on Facebook, to learn about news happening on various bases worldwide and to advise, mentor, and assist families and spouses who live on base.

B. **Facebook Is a Social Media Platform with Key Features.**

23. Facebook is a social media platform with approximately 3.07 billion monthly active users worldwide, including approximately 197 million monthly active users in the United States in 2024.

24. Facebook allows users to upload various types of content, including text, news articles, photos, and videos.

25. Facebook also allows other users to respond to, comment on, and interact with others regarding other content.

26. A Facebook "page" is a way for "public figures, businesses, brands, organizations, and nonprofits" to "connect with their fans or customers." *See* Facebook, What's the difference between a profile, page, and group on Facebook? https://www.facebook.com/help/337881706729661.

27. In contrast, a "profile" is the home page of a Facebook account, typically used by private individuals. It is "a place on Facebook where you can share information about yourself, such as your interests, photos, videos, current city and hometown." *Id.*

5

28. The content that a Facebook user shares with friends, followers, or the public is called a "post." Posts can be made by the owner of a profile or a page. Posts may be made by other users who visit a page only if the owner of the page permits the post.

29. Facebook users can respond to or comment on posts, unless not permitted to do so. This is called "replying" or "commenting." Replies appear immediately under the post to which they respond, thereby reflecting the interaction of ideas or viewpoints that the Facebook page or profile is intended to foster.

30. To mention a page in a post or reply, a Facebook user types the page's tag, which is the "@" symbol followed by the page's name. *See* Facebook: How do I mention people, pages or groups in a post or comment on Facebook? https://www.facebook.com/help/218027134882349.

31. An owner of a Facebook page has the ability to independently control its content, separate and apart from any controls Facebook may exercise. They may hide or delete posts made by other users, individual comments on those posts, and individual replies to those comments.

32. Owners of a Facebook page can also ban a user from the page. A banned user is barred from seeing, commenting, posting, or otherwise contributing to the page, and is thereby excluded from participation in the online dialogue or debate. When a page owner bans someone from a page, the owner may choose whether or not to delete all of the individual's past comments.

### C. The Naval Submarine Base Kings Bay Has an Official Facebook Page.

33. In 2009, the Naval Submarine Base Kings Bay established an official Facebook page.

34. When he became commanding officer of Naval Subase Kings Bay, Captain Bohner took over control and operation of the Facebook Page.

35. Captain Bohner exercises control over the Facebook Page, moderates comments and posts to the Facebook Page, and controls who can post on, comment on, or read the Facebook Page.

36. Defendant Bassett assists him in exercising control over the Facebook Page, moderating comments and posts to the Facebook Page, and controlling who can post on, or comment on, or read the Facebook Page.

37. The Facebook Page is separate and distinct from Captain Bohner's personal Facebook profile.

38. The Facebook Page has approximately 34,000 followers.

39. The Facebook Page describes itself as "the official Naval Submarine Base Kings Bay Facebook page," and it states, "Welcome to the official Naval Submarine Base Kings Bay Facebook page."

40. The Facebook Page links to the base's official website.

41. The Facebook Page identifies itself as a "government organization."

42. The tag for the Facebook Page is @Naval Submarine Base Kings Bay.

43. Captain Bohner regularly uses the Facebook Page to make public announcements to the Naval Submarine Base Kings Bay community.

44. The Facebook Page is accessible to the general public, and no Facebook account is required to view its content or the public discussions. Any user with a Facebook account may post a comment, unless the Facebook Page has banned that user from commenting.

45. Rodriguez has been posting to the Facebook Page for the past four years without incident.

D. **After Rodriguez Posts Helpful Information on the Facebook Page, Defendants Ban Rodriguez from the Facebook Page and Delete His Posts.**

46. On August 12, 2024, an electrical power outage occurred at Naval Submarine Base Kings Bay, leaving many military families living on base without power for more than 12 hours.

47. When Rodriguez learned of the situation through the Facebook Page, he posted comments and advice there for families living on base.

48. For example, when power had not been restored by the next morning, Rodriguez saw a post on the Facebook Page stating that officials were "working [on it] have been out since first daylight. No ETA yet." Rodriguez replied, "interested in the response to this."

49. Later that day, after learning that power still had not been restored, Rodriguez tagged the Facebook Page and posted: "is there a plan in place to temporarily relocate residents if the power outage continues? It's entirely too hot and humid to sit in a house without air conditioning. If residents need to relocate, who should they reach out to?"

50. Afterwards, that same day, as the power outage continued, Plaintiff tagged the Facebook Page and posted, "will you share the proper route for residents to take for reimbursement for their perishables? Power has been out for several hours, compensation needs to happen."

51. About an hour later, the Facebook Page responded to that question, tagging Rodriguez, and posted: "Anyone who thinks they have a claim should respond to the Navy Legal Service Office at [phone number]."

52. A screenshot of the exchange on the Facebook Page is depicted below:



9

53. Shortly thereafter, Defendant Bassett, at the direction of Defendant Bohner, banned Rodriguez from the Facebook Page and deleted all of Rodriguez's previous comments from the page.

54. Rodriguez then received a call from Defendant Bohner's wife, during which she indicated that he had been banned from the Facebook Page.

55. Unable to access the Facebook Page following the ban, Rodriguez later learned from friends that his previous comments had been deleted.

56. On August 15, 2024, Rodriguez emailed Defendant Bassett requesting reinstatement to the Facebook Page.

57. Rodriguez received no response to his August 15, 2024 email.

E. **Rodriguez Has Suffered, and Continues to Suffer, Injuries to His Rights to Receive Information, Offer Advice, and Associate with Others.**

58. Rodriguez suffered irreparable injury to his right to speak when Defendants deleted all his comments from the Facebook Page. Viewers of the page are unable to see any of Rodriguez's comments.

59. Presently, Rodriguez remains banned from the Facebook Page.

60. Because he is banned from the Facebook Page, Rodriguez has suffered irreparable and ongoing harm in being prevented from receiving information from the Facebook Page.

61. Because he is banned from the Facebook Page, Rodriguez has suffered irreparable and ongoing harm in being prevented from offering advice and assistance to others on the Facebook Page.

62. Because he is banned from the Facebook Page, Rodriguez has suffered irreparable and ongoing harm in being prevented from associating with other commenters to the Facebook Page.

63. But for Defendants' banning him from the Facebook Page, Rodriguez would continue to post information and advice for Base residents and would continue to question and criticize action or inaction by Base officials that he thought harmed the interests of military families living on the Base.

## COUNT ONE

### First Amendment Violation (Viewpoint Discrimination)

64. Plaintiff alleges each of the foregoing paragraphs as if fully stated herein.

65. Rodriguez's speech on the Facebook Page is protected under the First Amendment.

66. The Facebook Page constitutes a public forum or a limited public forum under the United States Constitution.

67. At the time Defendants Bohner and Bassett banned Rodriguez from the Facebook Page and deleted his comments, they were acting in their official capacity and performing governmental functions.

68. Defendants Bohner and Bassett violated the First Amendment of the United States Constitution when they deleted Rodriguez's comments and banned him from the Facebook Page because of the content and viewpoint of Rodriguez's

constitutionally protected speech. Deleting Rodriguez's comments was direct censorship.

69. Defendants' deletion of Rodriguez's comments was a viewpoint-discriminatory restriction of expression because it censored Rodriguez based on the message or viewpoint expressed—real or perceived.

70. Viewpoint discrimination is presumptively unconstitutional and is forbidden in any designated public forum, limited public forum, or nonpublic forum.

71. As a viewpoint-discriminatory restriction, the deletion of Rodriguez's comments from an official government Facebook page is subject to, and fails strict scrutiny.

72. There is no legitimate interest in deleting Rodriguez's comments inquiring about the Navy's response to an emergency, let alone a compelling one.

73. Deleting all of Rodriguez's comments was not narrowly tailored to meet whatever purported interest Defendants may assert.

74. Banning Rodriguez from commenting on the Facebook Page infringes upon his First Amendment right to participate in discussions, ask questions, obtain information, and provide information in the public forum established by the Naval Submarine Base Kings Bay and controlled by Defendants Bohner and Bassett.

75. Banning Rodriguez from viewing and commenting on the Facebook Page infringes upon his First Amendment right to associate with others in the public forum established by the Naval Submarine Base Kings Bay and controlled by Defendants Bohner and Bassett.

76. Rodriguez has no adequate legal, administrative, or other remedy by which to prevent or minimize the irreparable and ongoing harm to its First Amendment rights from Defendants' unconstitutional viewpoint discrimination.

77. Because a justiciable controversy exists over Defendants' viewpoint-based discrimination against Rodriguez's protected expression, Rodriguez also seeks declaratory relief against Defendants. A judgment declaring that the Defendants' deletion of Rodriguez's comments violates the First Amendment will further resolve and clarify the parties' legal relationship.

## COUNT TWO

### First Amendment Violation (Prior Restraint)

78. Plaintiff alleges each of the foregoing paragraphs as if fully stated herein.

79. Rodriguez's speech on the Facebook Page is protected under the First Amendment. And Rodriguez would like to continue posting protected speech on the Facebook Page.

80. The Facebook Page constitutes a public forum or a limited public forum under the United States Constitution.

81. At the time Defendants Bohner and Bassett banned Rodriguez from the Facebook Page and deleted his comments, they were acting in their official capacity and performing governmental functions.

82. By banning Rodriguez from the Facebook Page indefinitely, Defendants Bohner and Basset have prevented Rodriguez from speaking on the Facebook Page in the future, regardless of the viewpoint of his speech.

83. In so doing, Defendants Bohner and Bassett have imposed an unconstitutional prior restraint on Rodriguez's speech.

84. Prior restraints are presumptively unconstitutional. *Org. for a Better Austin v. Keefe*, 402 U.S. 415, 419 (1971).

85. The First Amendment bars the government from banning speech before it can be heard.

86. Defendants Bohner and Basset did not give Rodriguez any notice before banning him from the Facebook Page or deleting his comments.

87. Defendants Bohner and Bassett did not given Rodriguez any opportunity to contest the ban or the deletion of his comments from the Facebook Page. Upon information and belief, Defendants have no procedural safeguards in place to contest a ban from the Facebook Page.

88. Defendants Bohner and Bassett have no legitimate interest in suppressing Rodriguez's future speech, let alone a compelling interest.

89. Rodriguez's Facebook comments were nondisruptive and relevant to the posts to which he was responding.

90. Additionally, completely blocking Rodriguez from posting on the Facebook Page indefinitely is not narrowly tailored to achieve any compelling government interest. It is not the least restrictive means to achieve any such interest.

91. Absent injunctive relief and declaratory relief enjoining Defendants from imposing an impermissible prior restraint on speech, these federal officials will continue to violate Rodriguez's constitutional rights.

92. Because a justiciable controversy exists over Defendants' impermissible prior restraint of Rodriguez's protected expression, Rodriguez also seeks declaratory relief against Defendants. A judgment declaring that the Defendants' ban of Rodriguez from the Facebook Page violates the First Amendment will further resolve and clarify the parties' legal relationship.

WHEREFORE, Plaintiff requests that this Court:

    A.    Declare that, by banning Rodriguez from the Facebook Page and by deleting his comments, Defendants violated Rodriguez's rights under the First Amendment of the United States Constitution;

    B.    Declare that by prohibiting Rodriguez's future speech on the Facebook Page, Defendants committed an unconstitutional prior restraint on Rodriguez's speech in violation of the First Amendment of the United States Constitution;

    C.    Enter an injunction (i) prohibiting Defendants from blocking Rodriguez from the Facebook Page or deleting his comments on the basis of his viewpoint and (ii) requiring Defendants to restore Rodriguez's deleted comments and unblock Rodriguez from seeing and commenting on the Facebook Page;

      D.      Award Plaintiff costs and reasonable attorneys' fees and other expenses, pursuant to 28 U.S.C. § 1920, 28 U.S. Code § 2412, or any other applicable authority; and

      E.      Grant any additional relief as may be just and proper.

Dated: July 3, 2025

                        /s/ *Michael A. Petrino*
Michael A. Petrino (Va. Bar. No. 77187)
Michelle A. Scott (*pro hac vice forthcoming*)
CENTER FOR INDIVIDUAL RIGHTS
1100 Connecticut Ave, NW
Suite 625
Washington, DC 20036
Tel: (202) 833-8400
petrino@cir-usa.org
scott@cir-usa.org