UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

SERGIO RODRIGUEZ,

       Plaintiff,

v.                                                    CIVIL NO. 2:25-cv-408

CAPTAIN WILLIAM DULL,
in his official capacity as Commanding
Officer of Naval Submarine Base Kings Bay,

and

SCOTT BASSETT,
in his official capacity as Public Affairs
Officer for Naval Submarine Base Kings Bay,

       Defendants.

## OPINION

This matter comes before the court on Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction, which was filed on December 12, 2025. ECF Nos. 17 ("Motion to Dismiss"), 18 (Memorandum in Support). For the reasons explained in this Opinion, Defendants' Motion to Dismiss is **DENIED**.

## I. INTRODUCTION

Plaintiff filed this action against Defendants, in their official capacities, on July 3, 2025, alleging that they violated his First Amendment rights by "banning," i.e., excluding, Plaintiff from an official, public Facebook page for Naval

Submarine Base Kings Bay (the "NSBKB Facebook"), which Defendants maintain and administer for the benefit of the Naval Submarine Base Kings Bay ("NSB Kings Bay") community and interested members of the public. ECF No. 1 ("Complaint"); see ECF No. 18 at 1. Defendants move for dismissal under Federal Rule of Civil Procedure 12(b)(1), arguing that their voluntary reinstatement of Plaintiff's access to the NSBKB Facebook has rendered the controversy underlying this case moot. ECF Nos. 17, 18.

## A. Facts Alleged

Plaintiff is a retired Army veteran and military spouse residing in Chesapeake, Virginia. Compl. ¶¶ 8, 9. Plaintiff alleges that, for a number of years, he has provided advocacy and assistance to military families encountering issues with military housing. Id. ¶¶ 13-15. Plaintiff is well known in the military community for his efforts and has earned praise and commendation from President Joseph Biden, First Lady Jill Biden, Senator Cory Booker, General Mark Milley, and others. Id. ¶¶ 16-20. As part of his advocacy on behalf of military families, Plaintiff "regularly follows the official social media pages of various military bases," which he uses to monitor news on military bases and to communicate with military spouses and families. Id. ¶¶ 21-22.

NSB Kings Bay is located on the Southeast coast of Georgia. Id. ¶ 10. In 2009, NSB Kings Bay established an official,

2

"government organization," Facebook page, which now has approximately thirty-four thousand (34,000) followers and serves as a digital bulletin board for the NSB Kings Bay community and interested members of the public. Id. ¶¶ 33, 37-44; ECF No. 18-1 ¶¶ 5-6 ("Bassett Declaration").[1] The NSBKB Facebook also serves as a mouthpiece for NSB Kings Bay leadership, as base officials publish posts on the NSBKB Facebook under the page's name. See Compl. ¶¶ 43, 52; Bassett Decl. ¶¶ 5, 6. As Commanding Officer ("CO") of NSB Kings Bay, Defendant Captain Christopher Bohner "exercise[d] control" over the NSBKB Facebook, "moderate[d] comments and posts," issued announcements and posts, and "control[led] who can post on, comment on, or read the [NSBKB] Facebook Page." Compl. ¶ 35; see Bassett Decl. ¶ 3.[2] Defendant

_____

[1] Facebook is a social media platform that "allows users to upload various types of content, including text, news articles, photos, and videos." Compl. ¶¶ 23, 24. Facebook also allows users to "respond to, comment on, and interact with others regarding other content." Id. ¶ 25; see Bassett Decl. ¶ 6. A Facebook "page" is a space created within Facebook and used by "public figures, businesses, brands, organizations, and nonprofits to connect with their fans or customers." Compl. ¶ 26 (citation and quotation marks omitted); see Bassett Decl. ¶¶ 2, 5, 6.

[2] Captain Bohner retired as CO of NSB Kings Bay on or about July 3, 2025. Bassett Decl. ¶ 4; see ECF No. 19 at 4 n.1. He has been replaced in that capacity by Captain William Dull. Bassett Decl. ¶ 4. Because Plaintiff sues Captain Bohner solely in his official capacity, Captain Dull is automatically **SUBSTITUTED** for Captain Bohner pursuant to Federal Rule of Civil Procedure 25(d), and the Clerk is **DIRECTED** to recaption this matter under Captain Dull's name. Fed.R.Civ.P. 25(d).

3

Public Affairs Officer ("PAO") Scott Bassett assists the CO in this capacity. Compl. ¶ 36; Bassett Decl. ¶¶ 2, 3. But the NSBKB Facebook is viewable by the public, and any Facebook user may post a comment, unless the owner of the NSBKB Facebook has "banned" that user. Compl. ¶ 44; Bassett Decl. ¶ 6.[3]

Plaintiff was an active user of the NSBKB Facebook and posted to the page for four (4) years. Compl. ¶ 45. On August 12, 2024, a power outage occurred at NSB Kings Bay, which left military families living on base without power for over twelve (12) hours. Id. ¶ 46. The NSBKB Facebook posted "[w]e're aware of the ongoing power outage in base housing. Public Works is on the scene now working to restore electricity as quickly as possible. Thank you for your patience and understanding!" Id. ¶ 52. When Plaintiff learned of the outage via the NSBKB Facebook, he posted comments and advice there for affected families. Id. ¶¶ 47, 48. In one comment on the NSBKB Facebook's post about the outage, Plaintiff

---

[3] The "owner" of a Facebook page can "hide or delete posts made by other users" and "ban a user from the page." Compl. ¶¶ 31, 32. A banned user is "barred from seeing, commenting, posting, or otherwise contributing to the page[.]" Id. ¶ 32; see Bassett Decl. ¶ 7. Moreover, when a page owner bans a user from a page, the owner "may choose whether or not to delete all of the individual's past comments." Compl. ¶ 32. But see Bassett Decl. ¶ 7 ("Once a user is blocked from the page, his prior replies and reactions are hidden from view by other users, but not permanently deleted. If the user is subsequently unblocked, then his prior replies and reactions are restored and viewable by other users, unless he has deleted his prior replies and reactions.").

"tagged" the NSBKB Facebook and asked "is there a plan in place to temporarily relocate residents if the power outage continues? It's entirely too hot and humid to sit in a house without air conditioning. If residents need to relocate, who should they reach out to?" Id. ¶¶ 49, 52.[4] In another comment, Plaintiff tagged the NSBKB Facebook and posted "will you share the proper route for residents to take for reimbursement for their perishables? Power has been out for several hours, compensation needs to happen." Id. ¶¶ 50, 52. The NSBKB Facebook responded to Plaintiff's comment an hour later, saying "[a]nyone who thinks they have a claim" should contact the Navy Legal Service Office. Id. ¶¶ 51, 52.

After the NSBKB Facebook responded to Plaintiff's comment, PAO Bassett, at the direction of Captain Bohner, banned Plaintiff from the NSBKB Facebook. Id. ¶ 53; Bassett Decl. ¶ 9. Plaintiff contacted PAO Bassett on August 15, 2024, requesting reinstatement of his access to the NSBKB Facebook, but he received no response. Compl. ¶¶ 56, 57.

The parties disagree about what happened to Plaintiff's previous posts and comments on the NSBKB Facebook after Defendants

---

[4] A Facebook user may direct a post or comment to a specific page, such as the NSBKB Facebook, by "tagging" it with an "@" symbol followed by the page's name. Compl. ¶ 30. The tag for the NSBKB Facebook is "@Naval Submarine Base Kings Bay." Id. ¶ 42.

banned him.[5] Plaintiff alleges that when PAO Bassett banned him from the NSBKB Facebook, he also "deleted all of [Plaintiff's] previous comments from the page." See id. ¶¶ 32, 53, 68. Defendants deny that they deleted Plaintiff's past posts and comments, but they acknowledge that the posts and comments were hidden from the public and other Facebook users following the ban. ECF No. 18 at 4, 5 n.2; Bassett Decl. ¶¶ 9, 13.

## B. Procedural History

Plaintiff filed his Complaint in this court on July 3, 2025, seeking declaratory and injunctive relief against Defendants in their official capacities. Compl. ¶¶ 10-11. Plaintiff claims that his posts and comments on the NSBKB Facebook constitute protected speech in a limited public forum. Id. ¶¶ 65, 66. Plaintiff argues that by banning him from the official NSBKB Facebook, and by allegedly deleting his posts and comments, Defendants engaged in censorship and viewpoint discrimination in violation of Plaintiff's First Amendment rights. Id. ¶¶ 68, 69. Because Plaintiff remained banned at the time of filing, Plaintiff also argues that Defendants' conduct amounted to an ongoing violation of his First Amendment right to view content and communicate with others on the NSBKB Facebook. Id. ¶¶ 74, 75, 83. Accordingly,

---

[5] See supra note 3 and accompanying text.

6

Plaintiff seeks (1) a declaration stating that Defendants violated Plaintiff's First Amendment rights by banning him from the NSBKB Facebook and deleting his posts and comments; (2) an injunction ordering that Defendants reinstate Plaintiff's access to the NSBKB Facebook and restore his previous posts and comments; (3) an injunction prohibiting Defendants from engaging in further viewpoint discrimination against Plaintiff on the NSBKB Facebook; (4) costs and reasonable attorney's fees; and (5) additional relief as appropriate. Id. at 15-16.

Following several extensions of the responsive pleading deadline, Defendants moved to dismiss Plaintiff's Complaint on December 12, 2025. ECF Nos. 17, 18. Defendants acknowledge that they banned Plaintiff from the NSBKB Facebook, but they make no effort to defend their actions toward Plaintiff or to argue that banning Plaintiff was permissible under the First Amendment. See generally ECF Nos. 18, 20. Rather, Defendants claim that, after being served the Complaint on September 3, 2025, "the Navy unblocked Plaintiff" from the NSBKB Facebook on or about September 29, 2025. ECF No. 18 at 2; Bassett Decl. ¶ 13. As a result, Defendants claim that Plaintiff is presently able to "reply and react to posts on the page." ECF No. 18 at 2. Defendants argue that this matter should therefore be dismissed as moot, as Plaintiff no longer has Article III standing and there is no longer

an active case or controversy for the court to resolve. Id. at 6-12.[6]

Defendant's Memorandum in Support of its Motion to Dismiss is accompanied by the Bassett Declaration, which is accompanied by a copy of the U.S. Navy Social Media Handbook. Bassett Decl. Attach. A ("Navy Social Media Handbook"). The Bassett Declaration affirms many of the factual allegations of the Complaint, and it provides factual allegations about corrective actions taken by Defendants since Plaintiff was banned from the NSBKB Facebook and Defendants received service of the Complaint.

On December 26, 2025, Plaintiff filed an Opposition to Defendant's Motion to Dismiss, ECF No. 19, which was accompanied by the Declaration of Sergio Rodriguez, ECF No. 19-1 ("Rodriguez Declaration"). Plaintiff acknowledges that his access to the NSBKB Facebook has been reinstated, Rodriguez Decl. ¶ 33, but he argues that a justiciable controversy remains in this case, ECF No. 19. Defendants filed their Reply on January 2, 2026. ECF No. 20.

On January 8, 2026, Defendants filed a Notice requesting that the court rule on their Motion to Dismiss without setting a

---

[6] Defendants state, however, that some of Plaintiff's previous posts and comments are not currently viewable on the NSBKB Facebook, even though Defendants claim they did not delete or hide Plaintiff's prior replies and comments at any time. ECF No. 18 at 4, 5 n.2; Bassett Decl. ¶ 13; see supra note 3 and accompanying text.

hearing. ECF No. 21. That same day, Plaintiff filed a Notice requesting a hearing and oral argument. ECF No. 22. With briefing on the Motion to Dismiss completed by the parties, it is ripe for a ruling, and the court deems a hearing and oral argument unnecessary, as relevant facts and legal contentions are adequately presented in the materials before the court. Accordingly, the court proceeds to determine whether it may assert subject matter jurisdiction over the instant matter.

## II. STANDARDS

### A. Rule 12(b)(1) Motion to Dismiss

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) may challenge the court's subject matter jurisdiction "in one of two ways: facially or factually." Beck v. McDonald, 848 F.3d 262, 270 (4th Cir. 2017) (citation omitted). In a "facial challenge," the defendant argues "that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based." Id. (quoting Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009)). Accordingly, in considering a facial challenge to subject matter jurisdiction, the court treats allegations in the complaint as true and must deny the motion to dismiss if the complaint "alleges sufficient facts to invoke subject matter jurisdiction." Id. (quoting Kerns, 585 F.3d at 192).

9

In a "factual challenge," the defendant challenges the jurisdictional allegations in the complaint as untrue, id. (citation omitted), and "the district court may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings" to determine if jurisdiction exists, Kuntze v. Josh Enterprises, Inc., 365 F. Supp. 3d 630, 636 (E.D. Va. 2019) (footnote omitted) (quoting Velasco v. Gov't of Indonesia, 370 F.3d 392, 398 (4th Cir. 2004)). How the court evaluates evidence turns on whether the "jurisdictional facts are intertwined with the merits facts." Id. (citing Kerns, 585 F.3d at 196). Where jurisdictional facts are not intertwined with facts "necessary to prove the merits of the plaintiff's claim," this court may "weigh evidence and make findings of fact to resolve the jurisdictional dispute." Id. at 644-45 (citing Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006); Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982)). If, however, jurisdictional and merits facts are intertwined, "a presumption of truthfulness should attach to the plaintiff's allegations," Kerns, 585 F.3d at 193 (citation omitted), and the court "should not weigh evidence and make findings of fact," Kuntze, 365 F. Supp. 3d at 645.

## B. Article III Standing

Article III of the United States Constitution limits the subject matter jurisdiction of this court to "Cases" and

10

"Controversies." U.S. Const. art. III, § 2; <u>Murthy v. Missouri</u>, 603 U.S. 43, 56 (2024). An "essential and unchanging part of the case-or-controversy requirement of Article III" is standing. <u>Lujan v. Defs. of Wildlife</u>, 504 U.S. 555, 560 (1992). A plaintiff who files a complaint in federal court bears the burden of establishing standing "as of the time he brought [the] lawsuit and maintaining it thereafter." <u>Carney v. Adams</u>, 592 U.S. 53, 59-60 (2020) (citations omitted). And the plaintiff must establish standing for "each claim that they press and for each form of relief that they seek." <u>TransUnion LLC v. Ramirez</u>, 594 U.S. 413, 431 (2021) (citations omitted).

To establish standing, the plaintiff must show that he has suffered, or will suffer, an injury that is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." <u>Monsanto Co. v. Geertson Seed Farms</u>, 561 U.S. 139, 149 (2010) (citation omitted). The injury cannot be "hypothetical" or "abstract." <u>TransUnion</u>, 594 U.S. at 423. Nor can an alleged future injury be "too speculative." <u>Clapper v. Amnesty Int'l USA</u>, 568 U.S. 398, 409 (2013) (citation omitted). But intangible harms "specified by the Constitution itself" may be sufficiently "concrete" to establish standing. <u>TransUnion</u>, 594 U.S. at 425 (citations omitted). And an alleged future injury may confer

11

standing if it is "certainly impending." Clapper, 568 U.S. at 409 (emphasis in original) (quoting Lujan, 504 U.S. at 565 n.2).

## C. Mootness

For this court to exercise subject matter jurisdiction, Article III requires that an "actual controversy" exist throughout "all stages" of litigation. Already, LLC v. Nike, Inc., 568 U.S. 85, 90-91 (2013) (citations omitted). An actual controversy becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Carter v. Fleming, 879 F.3d 132, 137 (4th Cir. 2018) (quoting Chafin v. Chafin, 568 U.S. 165, 172 (2013)). A case may become moot "when the facts or law underlying the case change, including 'when the claimant receives the relief he or she sought to obtain through the claim.'" McArthur v. Brabrand, 610 F. Supp. 3d 822, 835 (E.D. Va. 2022) (quoting Simmons v. United Mortg. & Loan Inv., LLC, 634 F.3d 754, 763 (4th Cir. 2011)).

Mootness has been described as Article III standing "set in a time frame," see, e.g., Arizonans for Official English v. Arizona, 520 U.S. 43, 68 n.22 (1997), but the Supreme Court has clarified that this description is not "comprehensive," Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc., 528 U.S. 167, 170 (2000). Whereas the plaintiff must prove Article III standing, a party asserting mootness because of its voluntary

12

cessation of the offending conduct "bears the burden to establish that a once-live case has become moot." West Virginia v. EPA, 597 U.S. 697, 719-20 (2022) (citations omitted). A defendant may not "'automatically moot a case' by the simple expedient of suspending its challenged conduct after it is sued." FBI v. Fikre, 601 U.S. 234, 241 (2024) (quoting Already, 568 U.S. at 91). If it were so, a defendant would be "free to return to his old ways." Laidlaw, 528 U.S. at 189 (citation omitted). Rather, where a defendant asserts that its voluntary cessation of allegedly unlawful conduct moots a case, the defendant "bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." Id. at 190 (citing United States v. Concentrated Phosphate Exp. Ass'n, Inc., 393 U.S. 199, 203 (1968)).

### III. ANALYSIS

#### A. Factual Challenge

To begin, the court deems Defendants' Rule 12(b)(1) Motion to Dismiss a "factual challenge" to the court's subject matter jurisdiction. See Kuntze, 365 F. Supp. 3d at 636. Defendants do not argue that the Complaint, on its face, fails to establish jurisdiction. See Beck, 848 F.3d at 270 (stating a "facial challenge" lies where the defendant argues the complaint "simply fails to allege facts upon which subject matter jurisdiction can

13

be based" (citation omitted)); see also McArthur, 610 F. Supp. 3d at 834 (holding that a "facial challenge" lay where the defendants argued that the plaintiffs lacked standing "based on the allegations in the [c]omplaint"). Rather, Defendants allege that the facts underlying this case have changed since August 2024 and since the filing and service of the Complaint. See ECF No. 18 at 4-6; Bassett Decl. ¶¶ 10-15. Defendants argue that these factual developments, including Plaintiff's reinstatement to the NSBKB Facebook, have deprived Plaintiff of a cognizable interest in the outcome of this litigation, thereby extinguishing a once-live controversy and depriving this court of subject matter jurisdiction. See generally ECF Nos. 18, 20; see also McArthur, 610 F. Supp. 3d at 834 (describing mootness argument as a "factual challenge").

Because Defendants bring a "factual challenge" to the court's subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the court will consider evidence beyond the pleadings. See Kuntze, 365 F. Supp. 3d at 636. Specifically, the court will treat uncontested factual allegations contained in the Complaint, the parties' briefing, and in the Bassett and Rodriguez Declarations as true. See Fikre, 601 U.S. at 242. The court will

14

also consider the Navy Social Media Handbook.[7] Where the parties' jurisdictional allegations are contradictory, the court will determine whether these allegations are "intertwined" with "facts necessary to prove the merits of the case." Kuntze, 365 F. Supp. 3d at 638. Where such facts are not intertwined, the court may weigh relevant evidence and make determinations of fact concerning its jurisdiction. Id. at 644-45. If jurisdictional and merits facts are intertwined, the court will not weigh relevant evidence or make determinations of fact, id. at 645, and will instead accord Plaintiff's allegations a "presumption of truthfulness," Kerns, 585 F.3d at 193.

### B. Mootness

Defendants' challenge to this court's jurisdiction rests on mootness, but their mootness argument asserts that factual developments have deprived Plaintiff of Article III standing. See, e.g., ECF No. 18 at 7 ("Plaintiff's case is moot because he cannot establish that he currently suffers from an injury in fact that is actual and imminent, or that his injury will likely be redressed

---

[7] Plaintiff does not contest the validity of the Navy Social Media Handbook provided by Defendants, Bassett Decl. Attach. A, and the court may take judicial notice of information contained on federal government websites, see United States v. Garcia, 855 F.3d 615, 621 (4th Cir. 2017); see also U.S. Navy Social Media Handbook, Navy Off. of Info., https://media.defense.gov/2024/Oct/24/2003570 660/-1/-1/0/U.S.%20NAVY%20SOCIAL%20MEDIA%20HANDBOOK%202024_2.PDF (last visited Mar. 25, 2026).

by a favorable decision from the Court."). Specifically, Defendants argue that Plaintiff has lost standing because Defendants reinstated his access to the NSBKB Facebook and because the United States Navy issued a revised Navy Social Media Handbook, which prevents Plaintiff from being "blocked or otherwise restricted" from accessing or using the NSBKB Facebook, as occurred on August 12, 2024. Id. at 8-9; ECF No. 20 at 7-10.

A plaintiff must maintain standing throughout the litigation. Carney, 592 U.S. at 59. However, "it is the doctrine of mootness, not standing, that addresses whether an intervening circumstance has deprived the plaintiff of a personal stake in the outcome of the lawsuit." West Virginia, 597 U.S. at 719 (emphasis in original) (citation modified). Where, as here, a defendant argues that its voluntary cessation of allegedly unlawful conduct has extinguished the plaintiff's interest in the litigation, the defendant shoulders the "formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." Laidlaw, 528 U.S. at 190. This burden "holds for governmental defendants no less than for private ones." Fikre, 601 U.S. at 241. And certainly a defendant who voluntarily ceases their offending conduct may not circumvent their burden by arguing that the plaintiff has lost Article III standing. See Adarand Constructors, Inc. v. Slater, 528 U.S. 216, 221-22 (2000).

16

1. <u>Voluntary Cessation</u>

In this case, Plaintiff alleges that Defendants unlawfully banned him from the NSBKB Facebook and deleted his posts because they disagreed with his viewpoint. <u>E.g.</u>, Compl. ¶¶ 53, 68, 74, 75, 82, 83. Defendants do not admit wrongdoing, but they reinstated Plaintiff's access to the NSBKB Facebook after he filed and served the Complaint. ECF No. 18 at 2; Bassett Decl. ¶ 13; <u>see</u> Rodriguez Decl. ¶ 33. Thus, Defendants claim that Plaintiff is presently able to "reply and react to posts on the page," ECF No. 18 at 2, and that his claims are consequently moot, <u>id.</u> at 6-12.

Plaintiff argues that his claims are not moot because Defendants have not demonstrated "that it is absolutely clear that the alleged wrongful behavior cannot reasonably be expected to recur." ECF No. 19 at 9 (citing <u>Laidlaw</u>, 528 U.S. at 190). Anticipating this argument, Defendants claim that there is no reasonable chance that Plaintiff will again be banned or restricted from use of the NSBKB Facebook for two (2) reasons. ECF No. 18 at 13. First, PAO Bassett avers that pursuant to the revised Navy Social Media Handbook, Defendants will not ban Plaintiff or otherwise restrict his use of the NSBKB Facebook "on account of comments or replies like or similar to those included in Paragraph 52 of Plaintiff's Complaint." Bassett Decl. ¶ 15. Second, Defendants claim that Plaintiff will not be blocked or

17

censored again because Captain Bohner, who directed that Plaintiff be banned from the NSBKB Facebook, has been replaced in his capacity as CO of NSB Kings Bay by Captain Dull. ECF No. 18 at 13. For the reasons explained below, Defendants have not met their "formidable burden," Laidlaw, 528 U.S. at 190, and this case falls within the "voluntary cessation" exception to mootness doctrine.[8]

### a. U.S. Navy Social Media Handbook

In October 2024, two months after Plaintiff was banned from the NSBKB Facebook, the United States Navy issued a revised Navy Social Media Handbook. ECF No. 18 at 4.[9] The Handbook provides:

**Blocking and Removing Content**

The Navy may not block individual social media accounts from official Navy social media sites. However, the Navy may delete comments that constitute a violation of law, regulation, or the Navy's terms of use. The Navy may also refer offensive comments to the social media service provider to consider enforcement of their own terms of service.

---

[8] In keeping with practice in the Fourth Circuit, the court refers to voluntary cessation as an "exception" to mootness doctrine. See Lighthouse Fellowship Church v. Northam, 20 F.4th 157, 162 n.4 (4th Cir. 2021). That said, the term "exception" is a "colloquialism". Eden, LLC v. Justice, 36 F.4th 166, 170 n.4 (4th Cir. 2022). There are "no exceptions" to the Article III case-or-controversy requirement, id., and "voluntary cessation" merely encompasses "limited circumstances where a case is not moot because the plaintiff continues to have a cognizable interest in the outcome," Lighthouse Fellowship Church, 20 F.4th at 162 n.4. In short, whether or not Defendants can meet their "formidable burden" under the voluntary cessation standard speaks directly to the existence of a live controversy in this matter.

[9] See supra note 7 and accompanying text.

18

> The First Amendment does not permit a public official who utilizes a social media account for all manner of official purposes to exclude persons from an otherwise open online dialogue because they expressed views with which the official disagrees. That said, not all speech is protected under the First Amendment. From 1791 to the present, examples include obscenity, defamation, fraud, incitement, and speech integral to criminal conduct.
>
> Comments posted on official Navy social media sites that constitute a violation of law, regulation or the Navy's terms of use may be removed if not needed for evidentiary purposes.

Navy Social Media Handbook at 13.

When determining if a reasonable expectation remains that a governmental defendant may resume its offending conduct, this court has looked "for a change in official policy or law, or some other external constraint on the defendant's action, such as a collateral court order." Davison v. Plowman, 191 F. Supp. 3d 553, 557 (E.D. Va. 2016) (citations omitted).[10] "In the absence of such a constraint, 'when a defendant retains the authority and capacity to repeat an alleged harm, a plaintiff's claim should not be dismissed as moot.'" Id. (quoting Wall v. Wade, 741 F.3d 492, 497 (4th Cir. 2014)). "Unsubstantiated assurances" and "bald assertions" by the defendant that it will not resume challenged conduct do not establish mootness. Id. (quoting Wall, 741 F.3d

---

[10] Several pertinent opinions concern cases brought by a plaintiff named Brian Davison. For clarity, the court will refer to the defendant's name when citing these opinions in short form.

19

at 497-98). Furthermore, the Supreme Court recently clarified that a government declaration does not satisfy the voluntary cessation standard unless it "speaks to" the government's actions if the plaintiff "does the same or similar things in the future." Fikre, 601 U.S. at 242.

Here, Plaintiff has been reinstated to the NSBKB Facebook, Rodriguez Decl. ¶ 33, and he intends to continue his military family advocacy on the page, id. ¶¶ 36-37; Compl. ¶ 63. The Navy Social Media Handbook appears to prohibit Defendants from banning Plaintiff from the NSBKB Facebook again in the future and from deleting his posts and comments absent a violation of "law, regulation, or the Navy's terms of use." Navy Social Media Handbook at 13. Nevertheless, at this juncture, it is unclear how the Navy Social Media Handbook is binding on Defendants or can constrain Defendants' "authority and capacity" to exclude Plaintiff from the NSBKB Facebook. See Plowman, 191 F. Supp. 3d at 557 (quoting Wall, 741 F.3d at 497). Defendants retain control of the NSBKB Facebook, complete with the attendant powers to ban Facebook users and delete their posts and comments. Bassett Decl. ¶¶ 2, 4, 8. Certainly, the Navy Social Media Handbook provision concerning "Blocking and Removing Content" provides guidance to Defendants as they continue to manage the NSBKB Facebook. See Navy Social Media Handbook at 13. But the Navy Social Media Handbook cannot be said, on its face, to

20

establish official policy amounting to a constraint on Defendants' "authority and capacity" to repeat the alleged harm. See Wall, 741 F.3d at 497; see also Bassett Decl. ¶ 11 (describing the Navy Social Media Handbook provisions concerning "blocking and removing content" as "guidance"). In fact, the Handbook appears to direct the reader elsewhere for actual "requirements for managing official social media." Navy Social Media Handbook at 14 (emphasis added) (directing reader to Department of Defense Instruction 5400.17 (Aug. 12, 2022)).

Even if the Navy Social Media Handbook is binding on Defendants in theory, the Handbook's provisions do not foreclose a reasonable expectation that Defendants will resume their alleged violations of Plaintiff's First Amendment rights. Critically, Defendants have not shown (1) that banning Plaintiff from the NSBKB Facebook or deleting his comments was permissible under United States Navy policies, regulations, and guidance existing in August 2024;[11] (2) that Captain Bohner and PAO Bassett were following such

---

[11] PAO Bassett represents that the previous version of the Navy Social Media Handbook stated "[c]ommands and activities shall not publish and shall prohibit content such as . . . [p]ersonal attacks, vulgar, hateful, violent or racist language, slurs, stereotyping, hate speech, and other forms of discrimination[.]" Bassett Decl. ¶ 12. Further, the previous version prohibited "[i]nformation that may engender threats to the security of Navy and Marine Corps operations or assets, or to the safety of [Navy] personnel and their families." Id.

policies, regulations, and guidance, and that their actions were not arbitrary; or (3) that the revised Navy Social Media Handbook accordingly provides a change in policy capable of constraining Defendants' actions. See Plowman, 191 F. Supp. 3d at 557-58; Wall, 741 F.3d at 497; see also Gilley v. Stabin, No. 23-35097, 2024 WL 1007480, at *1 (9th Cir. Mar. 8, 2024) (holding that state university policy against banning users from official social media pages did not moot § 1983 claims for prospective relief, brought by formerly banned user, because of the policy's "lack of formality and relative novelty, how easily the policy can be reversed, and the lack of procedural safeguards to protect from arbitrary action" (emphasis added)).[12]

Looking to Plaintiff's comments in paragraphs 48 and 52 of the Complaint, the court fails to see how banning Plaintiff from the NSBKB Facebook and allegedly deleting these comments would be authorized by the outdated Navy Social Media Handbook quoted by Defendants. See Bassett Decl. ¶ 12. Plaintiff's comments on the NSBKB Facebook were not a personal attack, "hate speech," or

---

[12] The court declines, at this juncture, to assess whether the United States Navy could revise the Navy Social Media Handbook at any time to permit Defendants to again ban Plaintiff. See ECF No. 19 at 16. Other considerations have satisfied the court that the Navy Social Media Handbook does not provide an adequate constraint on Defendants' "authority and capacity" to resume their offending conduct. See Wall, 741 F.3d at 497.

another form of "discrimination." Id.; see Compl. ¶ 52. Nor do the comments appear to threaten "the security of Navy and Marine Corps operations or assets" or "the safety of [Navy] personnel and their families." Bassett Decl. ¶ 12. Rather, Plaintiff's posts and comments appear only to seek assurance that NSB Kings Bay residents' needs were met during a power outage. Because Defendants have offered no other justification for banning Plaintiff than this outdated policy, the court is unassured that Captain Bohner and PAO Bassett's actions toward Plaintiff were not arbitrary. Consequently, now that Plaintiff has been reinstated to the NSBKB Facebook, the court lacks a sufficient basis to determine that Defendants will observe the revised Navy Social Media Handbook, to the extent it protects Plaintiff's First Amendment activity, should Plaintiff do "the same or similar things in the future." See Fikre, 601 U.S. at 242.

To the extent that PAO Bassett declares that Defendants will not block or otherwise restrict Plaintiff's use of the NSBKB Facebook, pursuant to the Navy Social Media Handbook or not, the court deems PAO Bassett's short and vague statement the sort of "sparse declaration" recently discredited by the Supreme Court. Compare Fikre, 601 U.S. at 242 ("[T]he government's sparse declaration falls short of demonstrating that it cannot reasonably be expected to do again in the future what it is alleged to have

23

done in the past."), and Wall, 741 F.3d at 497-98 (rejecting that "[u]nsubstantiated assurances" and "bald assertions" by governmental defendant establish mootness), with Already, 568 U.S. at 93 (finding "breadth" of "unconditional and irrevocable" covenant sufficient to "meet the burden imposed by the voluntary cessation test"). Critically, PAO Bassett does not explain Defendants' actions, admit wrongdoing, or "unambiguously disclaim[]" his ability to ban Plaintiff and delete his posts on the basis of viewpoint. Plowman, 191 F. Supp. 3d at 557; see Fikre, 601 U.S. at 244 ("[A] party's repudiation of its past conduct may sometimes help demonstrate that conduct is unlikely to recur."). Nor does PAO Bassett pledge to follow the Navy Social Media Handbook or acknowledge its blanket policy against banning "individual social media accounts from official Navy social media sites." Navy Social Media Handbook at 13. Rather, PAO Bassett merely repudiates the ability to restrict Plaintiff's access and use of the NSBKB Facebook "on account of comments or replies like or similar to those included in Paragraph 52 of Plaintiff's Complaint." Bassett Decl. ¶ 15. It is unclear to the court what PAO Bassett means when he says "on account of comments or replies like or similar to those included in Paragraph 52," id., so the court is uncertain what, if anything, PAO Bassett's repudiation "can prove about [his] future conduct." Fikre, 601 U.S. at 244.

24

Moreover, the Complaint alleges that Defendants deleted posts and comments beyond those set forth in Paragraph 52, so PAO Bassett's declaration provides, at best, an incomplete repudiation. See Compl. ¶ 48. Accordingly, the Bassett Declaration fails to (1) establish that Defendants will observe the Navy Social Media Handbook, to the extent the Handbook cures Plaintiff's injuries; and (2) otherwise foreclose a reasonable expectation that Defendants will resume the alleged violations of Plaintiff's First Amendment rights.

Lastly, even if the Navy Social Media Handbook is capable of constraining Defendants' actions on the NSBKB Facebook, it provides only an incomplete constraint. Plaintiff complains that Defendants unlawfully deleted his posts and comments. Compl. ¶ 53.[13] The revised Navy Social Media Handbook permits deleting "comments that constitute a violation of law, regulation, or the Navy's terms of use." Navy Social Media Handbook at 13. Considering that Defendants have provided little to no justification for banning Plaintiff from the NSBKB Facebook or for allegedly deleting his posts and comments, the court need not strain to see how this vague provision in the Navy Social Media Handbook might be invoked to resume the alleged censorship of Plaintiff's speech.

---

[13] See supra notes 3, 6 and accompanying text.

25

In summary, because the Navy Social Media Handbook does not appear to impose an "external constraint" on Defendants' actions, Plowman, 191 F. Supp. 3d at 557, it does not make "absolutely clear" that Defendants' "allegedly wrongful behavior could not reasonably be expected to recur," Laidlaw, 528 U.S. at 190; see Fikre, 601 U.S. at 242. Accordingly, this case is not moot.

b. New NSB Kings Bay Commanding Officer

The court fails to see how Captain Dull's replacement of Captain Bohner as CO of NSB Kings Bay forecloses a reasonable expectation that Plaintiff may again be banned or have his speech deleted on the NSBKB Facebook. This case is not moot simply because Captain Dull directed PAO Bassett to reinstate Plaintiff to the NSBKB Facebook. Bassett Decl. ¶ 13; see Plowman, 191 F. Supp. 3d at 557-58. While repudiation can "help demonstrate that conduct is unlikely to recur," what "matters" is what repudiation "can prove about . . . future conduct." Fikre, 601 U.S. at 244. Here, Captain Dull replaced Captain Bohner as CO of NSB Kings Bay on or about July 3, 2025. Bassett Decl. ¶ 4. Captain Dull did not direct PAO Bassett to reinstate Plaintiff to the NSBKB Facebook, however, until on or about September 29, 2025, after the Complaint had been filed and served on Defendants. Id. ¶ 13. The instant litigation appears to be the cause of Plaintiff's reinstatement to the NSBKB Facebook, not Captain Dull's appointment as CO of NSB Kings Bay.

26

Captain Dull's reinstatement of Plaintiff to the NSBKB Facebook therefore proves little about his future conduct, and accordingly, this case is not moot.

### c. The court does not follow McKercher or Wagschaf

Defendants urge the court to follow the example of McKercher v. Morrison, No. 18-cv-1054, 2019 WL 1098935 (S.D. Cal. Mar. 8, 2019). ECF No. 18 at 11-12. In that case, the Southern District of California deemed a Facebook user's civil rights claims for injunctive and declaratory relief moot after he was unblocked from a local government official's personal Facebook page. McKercher, 2019 WL 1098935, at *2-3. The court declines to follow McKercher, as the Southern District of California did not apply the "voluntary cessation" standard, which governs in this case posture, and conducted nothing more than a cursory mootness analysis. See Plowman, 191 F. Supp. 3d at 556-58.

Defendants also submit that the court should follow Wagschal v. Skoufis, 442 F. Supp. 3d 612, 620-23 (S.D.N.Y. 2020), in which the Southern District of New York dismissed as moot § 1983 claims by a Facebook user who had been banned from the official Facebook page of his New York State Senate representative. See ECF No. 18 at 13-14. The Southern District of New York found that the defendant had mooted the case by reinstating the plaintiff to the Facebook page long before moving to dismiss, refraining from

.

27

additional offending conduct, and by assuring the court that he had no intention of resuming his offending conduct. Wagschal, 442 F. Supp. 3d at 622. However, in doing so, the Southern District of New York accorded the New York senator's assurance deference because of his status as a government defendant, and the court accordingly refused to consider his future conduct. Id.

The court declines to follow Wagschal. First, as the Eastern District of New York recognized in Pinkhasov v. Vernikov, No. 1:23-cv-3460, 2024 WL 2188356, at *8 (E.D.N.Y. May 15, 2024), Wagschal preceded the Supreme Court's holding in Fikre, 601 U.S. 234. There, the Supreme Court held that the "formidable burden" of establishing mootness by voluntary cessation "holds for governmental defendants no less than for private ones." Fikre, 601 U.S. at 241-42 (emphasis added) (collecting cases); see Wall, 741 F.3d at 497-98 (declining to decide if statements by government defendants concerning voluntary cessation are entitled to deference). The Court accordingly discredited the "government's sparse declaration" because it fell short of "demonstrating that it cannot reasonably be expected to do again in the future what it is alleged to have done in the past." Fikre, 601 U.S. at 242 (citation omitted). Second, Wagschal is distinguishable from the instant case because the defendant reinstated the plaintiff's site access long before moving to dismiss and only so moved after the

case had benefited from discovery. 442 F. Supp. 3d at 616-17. Moreover, the defendant averred that he did "not intend to ban or block plaintiff's access [to the Senator's Facebook] page again at any time," id. at 621 (alteration in original) (emphasis added), whereas in this case PAO Bassett has only stated that Plaintiff will not be blocked "on account of comments or replies like or similar to those included in Paragraph 52 of Plaintiff's Complaint," Bassett Decl. ¶ 15. Accordingly, the court does not follow the example of Wagschal in according the Bassett Declaration deference or deeming Plaintiff's interest in this litigation extinguished by Defendants' voluntary cessation.

While the court's holding in this case is consistent with Pinkhasov, this Opinion presents a straightforward application of controlling law and precedent in this federal district. This case is most analogous to Plowman. There, the plaintiff sought injunctive relief under 28 U.S.C. § 1983 after he posted inflammatory comments on the official Facebook page of the Commonwealth's Attorney for Loudoun County, Virginia, and was subsequently banned. 191 F. Supp. 3d at 554-56. When the Commonwealth's Attorney voluntarily reinstated the plaintiff's access to his official Facebook page and moved to dismiss the case as moot, the court applied the voluntary cessation standard and denied the motion. Id. at 557-58. The court did so despite

29

affirmations by the Commonwealth's Attorney that he lacked "the authority to ban [the plaintiff] for [his] comment," and "believe[d] the U.S. Constitution limit[ed] his discretion to ban a Facebook participant." Id. at 558. There, as here, the court found that the Commonwealth's Attorney had not "put forward any change in official policy or other restraint on his ability" to ban the plaintiff or delete his comments. Id. at 557-58 (emphasis added). Nor had the Commonwealth's Attorney "unambiguously disclaimed" his ability to resume the offending conduct, as he had put forward only "minimal assurances." Id. Accordingly, the court found a "reasonable expectation" remained that the plaintiff could be banned or otherwise censored again, and the case was not moot. Id.

2. Continuing Case or Controversy

A live controversy persists in this case under the voluntary cessation exception, as Defendants have not made it "absolutely clear" that they will not resume their offending conduct. See Laidlaw, 528 U.S. at 190.[14] Nevertheless, the court will briefly address why Plaintiff otherwise continues to suffer from a legally cognizable injury capable of redress by this court.

---

[14] See supra note 8 and accompanying text.

30

Plaintiff claims that Defendants unlawfully censored his protected speech within a limited public forum by banning him from the NSBKB Facebook and by deleting his posts and comments. Compl. ¶¶ 53, 64-75.[15] In doing so, Plaintiff alleges that Defendants also infringed his First Amendment right to continue posting, sharing information, and associating with others on the NSBKB Facebook. Id. ¶¶ 74-75, 78-90. Defendants allegedly did so because of the viewpoint of Plaintiff's posts and comments. Id. ¶¶ 68-69. Accordingly, Plaintiff seeks a declaration that Defendants' actions were unconstitutional and an injunction restoring his access to the NSBKB Facebook and prohibiting Defendants from banning him or deleting his posts and comments on the basis of viewpoint. Id. at 15-16.

Defendants do not, at this juncture, dispute any of the foregoing allegations or attempt to defend their actions. See generally ECF Nos. 18, 20. Instead, Defendants reinstated Plaintiff to the NSBKB Facebook and now argue that Plaintiff cannot show an "ongoing or future injury in fact" redressable by

---

[15] Defendants do not dispute that the NSBKB Facebook is a limited public forum, and in any case, the court does not conduct forum analysis at this juncture because viewpoint discrimination by government officials against private speech is presumptively unconstitutional wherever it may arise. See Sons of Confederate Veterans, Inc. ex rel. Griffin v. Comm'r of Va. Dep't of Motor Vehicles, 288 F.3d 610, 622 (4th Cir. 2002).

prospective relief. ECF No. 18 at 6-12. For reasons discussed below, the court disagrees.

### a. Plaintiff's Ban from the NSBKB Facebook

Given Plaintiff's reinstatement to the NSBKB Facebook and PAO Bassett's averment that Plaintiff will not be blocked pursuant to the new Navy Social Media Handbook, Defendants argue that Plaintiff cannot establish an injury-in-fact "by virtue of his past exposure to Defendants' allegedly unlawful conduct." Id. at 8. It is true that "past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief if unaccompanied by any continuing, present adverse effects." Davison v. Randall, 912 F.3d 666, 677 (4th Cir. 2019) (citation modified). And "a plaintiff seeking declaratory or injunctive relief must establish an ongoing or future injury in fact." Id. at 677-78 (citation modified). To establish an injury-in-fact warranting prospective relief, a plaintiff seeking relief under the First Amendment must show "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." Kenny v. Wilson, 885 F.3d 280, 288 (4th Cir. 2018) (quoting Babbitt v. Farm Workers Nat'l Union, 442 U.S. 289, 298 (1979)). Alternatively, "there is an ongoing injury in fact if plaintiffs make a 'sufficient showing of self-censorship, which

occurs when a claimant is chilled from exercising his right to free expression.'" Id. (quoting Cooksey v. Futrell, 721 F.3d 226, 235 (4th Cir. 2013)).

In circumstances very similar to this case, the Fourth Circuit held that a plaintiff demonstrated an injury-in-fact sufficient to warrant declaratory relief after he had been banned from, and later reinstated to, the official Facebook page of the Chair of the Loudoun County, Virginia, Board of Supervisors. Randall, 912 F.3d at 678-79. The Fourth Circuit found that the plaintiff established an injury in fact because he "continue[d] to engage in a course of conduct . . . likely to be impacted by [the Chair's] allegedly unconstitutional approach to managing the page." Id. at 678. Specifically, the plaintiff "continue[d] to avail himself" of the Chair's Facebook page, was "active in local politics," and "[had] a particular interest in what he believe[d] to be corruption on the part of Loudoun County's school board." Id. (quoting Davison v. Loudoun Cnty. Bd. of Supervisors, 267 F. Supp. 3d 702, 707, 723 (E.D. Va. 2017)). Furthermore, the Fourth Circuit held that "a credible threat of enforcement" existed because the defendant's past act of blocking the plaintiff from the Chair's Facebook page provided "good evidence that the threat of enforcement" was not "chimerical," id. (quoting Susan B. Anthony List v. Driehaus, 573

33

U.S. 149, 164 (2014)), and because the defendant had not "disavowed" future enforcement, id. (citations omitted).

Here, according to uncontested allegations in the Complaint and the Rodriguez Declaration, Plaintiff is a well-known military family advocate with a demonstrated interest in the management and maintenance of military housing. Compl. ¶¶ 14-20, 52. Pursuant to his advocacy on behalf of military families, Plaintiff is a frequent user of "official social media pages of various military bases," including the NSBKB Facebook, which Plaintiff uses to "learn about news happening on various bases worldwide and to advise, mentor, and assist families and spouses who live on base." Id. ¶¶ 21-22, 45. Although Plaintiff was banned from the NSBKB Facebook, his access has been reinstated, and he intends to continue using the NSBKB Facebook to "post information and advice for Base residents" and to "question and criticize action or inaction by Base officials that he thought harmed the interests of military families living on the Base." Id. ¶ 63; see Rodriguez Decl. ¶¶ 29, 36-37. Given the foregoing, the court readily concludes that Plaintiff intends to "engage in a course of conduct" likely to be affected by Defendants' "allegedly unconstitutional approach to managing the page." Randall, 912 F.3d at 678.

Turning to the question of whether there is a "credible threat of enforcement," the court deems such a threat established by

34

Defendants' previous ban of Plaintiff. See id. at 678-79. For reasons described at length in this Opinion,[16] the threat is not mitigated by the revised Navy Social Media Handbook or by PAO Bassett's short and vague declaration. See Bassett Decl. ¶ 15. Accordingly, the court finds that there is a "credible threat of enforcement" against Plaintiff's continued participation on the NSBKB Facebook, and he has consequently established an injury-in-fact warranting prospective relief. See Randall, 912 F.3d at 679.[17]

Finally, the court is satisfied, at this juncture, that the injury-in-fact arising from Plaintiff's ban from the NSBKB Facebook is redressable by prospective relief. The appropriate moment for an injunction ordering Plaintiff's reinstatement to the NSBKB Facebook has "come and gone." Wells v. Johnson, 150 F.4th 289, 300 (4th Cir. 2025). And the court has reservations about how an injunction could otherwise properly issue, as this court may not issue injunctions "that simply require their subjects to follow the law." Loudoun Cnty. Bd. of Supervisors, 267 F. Supp. 3d at 722

---

[16] See supra Section III(B)(1)(a).

[17] Having confirmed a present or future injury-in-fact on the basis of a "credible threat of future enforcement," the court does not reach Plaintiff's argument that he has Article III standing because of the chilling effects of Defendants' actions. See ECF No. 19 at 19-20; Rodriguez Decl. ¶¶ 38-40.

(citation omitted). But declaratory relief would have the effect in this case of "clarifying and settling the legal relations in issue" and affording "relief from the uncertainty, insecurity, and controversy" concerning Plaintiff's continued use of the NSBKB Facebook. Id. at 723 (quoting Centennial Life Ins. Co. v. Poston, 88 F.3d 255, 256 (4th Cir. 1996)); see Randall, 912 F.3d at 679; see also Synopsys, Inc. v. Risk Based Sec., Inc., 70 F.4th 759, 764 (4th Cir. 2023) ("A case becomes moot, however, only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." (emphasis added) (quoting Campbell-Ewald Co. v. Gomez, 577 U.S. 153, 161 (2016))). Accordingly, insofar as Plaintiff was banned from the NSBKB Facebook, a live controversy persists in this matter for Article III purposes.

b. The Missing Posts and Comments

Lastly, this case is not moot insofar as some of Plaintiff's past posts and comments on the NSBKB Facebook remain missing. See Synopsys, 70 F.4th at 764 ("As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." (quoting Campbell-Ewald, 577 U.S. at 161)).[18]

Here, the parties agree that some of Plaintiff's past posts and comments on the NSBKB Facebook remain missing from public view

---

[18] See supra notes 3, 6 and accompanying text.

despite Plaintiff's reinstatement. Bassett Decl. ¶ 13; Rodriguez Decl. ¶ 34. The parties disagree, however, why these posts and comments remain hidden. Plaintiff claims that when Defendants banned him from the NSBKB Facebook, Defendant Bassett deleted his posts and comments at the direction of Captain Bohner. See Compl. ¶¶ 2, 32, 53. Defendants claim that they never deleted any of Plaintiff's posts or comments and that they should now be visible on the NSBKB Facebook. ECF No. 18 at 4, 5 n.2; Bassett Decl. ¶¶ 9, 13; ECF No. 20 at 6 n.1. Defendants also appear to insinuate that Plaintiff may have deleted or hidden his own comments. ECF No. 18 at 5 n.2; Bassett Decl. ¶ 13. Plaintiff denies doing so. Rodriguez Decl. ¶ 35.

Whether affirmatively deleted or lost as a result of Plaintiff's ban from the NSBKB Facebook, what exactly happened to the posts and comments presents a live issue of fact "intertwined" with the merits of Plaintiff's claim that he was censored in violation of the First Amendment. See Kuntze, 365 F. Supp. 3d at 645; Plowman, 191 F. Supp. 3d at 557. The court therefore declines to weigh evidence or make a finding of fact at this juncture and will instead allow the parties to proceed to discovery. See Kuntze, 365 F. Supp. 3d at 645.

For now, Plaintiff's allegation that Defendants deleted his posts and comments readily establishes injury-in-fact. See

Cooksey, 721 F.3d at 235 (describing "standing requirements" as "somewhat relaxed in First Amendment cases" (citations omitted)). And though Defendants appear to suggest that Plaintiff's past posts and comments are irretrievably lost, such that it is uncertain "what relief, if any, the Court could provide," ECF No. 20 at 6 n.1, it may be that Plaintiff's past posts and comments prove retrievable by Defendants. In that case, Plaintiff's alleged First Amendment injury is redressable by an order of this court. See Synopsys, 70 F.4th at 764; Plowman, 191 F. Supp. 3d at 557. Moreover, if Plaintiff's posts and comments prove irretrievably lost, declaratory relief would be appropriate given (1) Plaintiff's intent to continue his advocacy on the NSBKB Facebook; and (2) the credible risk Defendants will delete his comments, or ban him to the same effect.[19] Accordingly, because Defendants have restored only some of Plaintiff's past posts and comments, a live controversy exists and this case is not moot.

## IV. CONCLUSION

For the reasons stated above, the court concludes, at this juncture, that a live controversy persists in this matter. Accordingly, this case is not moot, and Defendants' Motion to

---

[19] See supra Section III(B)(2)(a).

Dismiss for Lack of Subject Matter Jurisdiction, ECF No. 17, is **DENIED.**

The Clerk is **DIRECTED** to forward a copy of this Opinion to counsel of record for the parties.

**IT IS SO ORDERED.**

/s/
Rebecca Beach Smith
Senior United States District Judge

REBECCA BEACH SMITH
SENIOR UNITED STATES DISTRICT JUDGE

March 27, 2026

39